IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

PURELIGHT POWER, LLC,
dba PURELIGHT POWER; PLP
ROOFING, LLC, dba PURELIGHT
ROOFING,

               Plaintiffs,

      v.

CHESTER WESTFALL,

               Defendant.

Civ. No. 1:22-cv-01146-CL

**OPINION & ORDER**

_____

AIKEN, District Judge

This matter comes before the Court on an Amended Motion for Preliminary Injunction filed by Plaintiffs on August 8, 2022.  ECF No. 10.  Although Defendant Chester Westfall has appeared in the case, ECF No. 11, Defendant has not responded either to Plaintiff's original Motion for Preliminary Injunction, ECF No. 6, or to the Amended Motion.  ECF No. 10.  The Court concludes that this matter is appropriate for resolution without oral argument.[1]  For the reasons set forth below, the motion is GRANTED.

---

[1] In the Ninth Circuit "there is no presumption that the issuance of a preliminary injunction requires an evidentiary hearing." *Softketeers, Inc. v. Regal West Corp.*, 788 Fed. App'x 468, 469 (9th Cir. 2019) (citing *Int'l Molders' & Allied Workers' Local Union v. Nelson*, 799 F.2d 547, 555 (9th Cir. 1986)).

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test, which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing of one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## BACKGROUND

Plaintiffs Purelight Power LLC, dba Purelight Power, and PLP Roofing LLC, dba Purelight Roofing (collectively "Purelight"), are Oregon limited liability companies with their principal places of business in Jackson County, Oregon. First

Am. Compl. ("FAC") ¶ 1.  ECF No. 14.[2]  Purelight is in the business of solar panel installation and roofing.  *Id.* at ¶ 6.  Most of Purelight's business involves the installation of solar panels on roofs, which frequently involves work to repair or reinforce the client's roof before the solar panels are installed.  *Id.* at ¶ 8.

Purelight owns the marks "Purelight," U.S. Serial No. 97/501,497, "Purelight Roofing," U.S. Serial No. 97/501,475, and "Purelight Power," U.S. Serial No. 97/501,450.  FAC ¶¶ 9-11.  Purelight owns the "Purelight," "Purelight Roofing," and "Purelight Power" marks (collectively the "Purelight Trademarks") in International Class 037 for:

> Installation, maintenance and repair of solar installations for generating power; Installation maintenance and repair of solar installations for generating power, solar collectors and photovoltaic modules; Installation, maintenance and repair of solar collectors; Roof maintenance; Roof maintenance services; Roofing installation; Roofing maintenance; Roofing maintenance services; Roofing repair; Roofing services; Installation of solar energy systems and alternative energy products for residential and commercial use; Installation, maintenance and repair of solar energy systems; Maintenance of roofing; and Repair of roofing.

FAC ¶ 12.

Purelight uses the Purelight Trademarks in the operation of its solar power and roofing business.  FAC ¶ 13.  Purelight also owns and operates a commercial website under the internet domain name "purelightpower.com" and intended to use the internet domain name "purelightroofing.com" to promote and operate its roofing business.  *Id.* at ¶¶ 13-14.  Purelight has used the Purelight Trademarks in operating

---

[2] Purelight filed their First Amended Complaint after the filing of the Amended Motion for Preliminary Injunction. Because the FAC is the operative pleading, the Court will cite to the FAC in this Order.

its website and business since April 2019 and enjoys public recognition, association, and goodwill connected to the Purelight Trademarks, particularly in Southern Oregon. *Id.* at ¶¶ 16-18; Wynn Decl. ¶¶ 2-4. ECF No. 10-2.

Defendant Chester Westfall is an individual residing in Jackson County, Oregon. FAC ¶ 2. Westfall is an independent roofing contractor working in and around Medford, Oregon. *Id.* at ¶ 19; Wynn Decl. ¶ 5. In the past, Purelight has contracted with Westfall to provide roofing work in Purelight projects as part of contracts between Purelight and Purelight customers. FAC ¶¶ 20-21; Wynn Decl. ¶ 6.

Purelight Construction Supervisor Dan Phillips was responsible for contracting roofing work to Westfall. FAC ¶ 23. In his capacity as Construction Supervisor, Phillips was privy to information and planning for the development of Purelight's roofing business. *Id.* at ¶ 24. In January 2022, Phillips advised Purelight to bring its roofing work "in-house" because of the increasing rates charged by Westfall. Wynn Decl. ¶ 7. During his time with Purelight, Phillips told other Purelight employees that Phillips knew a person who had purchased internet domain names related to his former employers and then used the domain names to "export his former employers to pay significant sums to 'purchase' the domain names." FAC ¶ 33.

On January 27, 2022, Purelight owner Dustin Wynn met with Westfall to discuss issues with recent work by Westfall. FAC ¶¶ 25-26; Wynn Decl. ¶ 8. During that meeting, Purelight informed Westfall that Purelight intended to do its own

roofing work under the name "Purelight Roofing." FAC ¶ 27; Wynn Decl. ¶ 8. Purelight offered to purchase Westfall's roofing company and hire Westfall as an employee, but the parties were unable to come to an agreement. FAC ¶¶ 29-31; Wynn Decl. ¶ 8.

On April 15, 2022, Purelight terminated Phillips's employment. FAC ¶ 32. On April 21, 2022, Phillips picked up his final paycheck and told Wynn that Purelight "would be sorry for firing him." Wynn Decl. ¶ 11. Westfall hired Phillips shortly thereafter. *Id.* at ¶ 13. On April 22, 2022, Westfall registered the internet domain names "purelightroofing.com" and "purelightroofing.net." *Id.* at ¶ 14. On June 15, 2022, Westfall registered the assumed business name "Purelight Roofing" with the Oregon Secretary of State. *Id.* at ¶ 15. Purelight offered to purchase the domains and assumed business name from Westfall for $20,000 but Westfall countered with an offer to sell the domains and assumed business name for "six figures." FAC ¶ 39; Wynn Decl. ¶ 17.

Westfall is not associated, affiliated, or connected with Purelight and is not licensed, authorized, sponsored, endorsed, or approved by Purelight. FAC ¶¶ 44-45. Purelight has not authorized or approved use of the Purelight Trademarks by Westfall. *Id.* at ¶ 46. Purelight alleges that Westfall's infringement of the Purelight Trademarks "was done knowingly, willfully, intentionally, and maliciously in a bad-faith attempt to confuse the public and cause harm to Purelight." *Id.* at ¶ 49.

## DISCUSSION

Purelight's original Complaint, ECF No. 1, alleged claims for (1) federal trademark infringement under 15 U.S.C. § 1114(a); (2) federal unfair competition under 15 U.S.C. § 1125(a); (3) violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (4) common law trademark infringement and unfair competition; (5) Oregon trademark infringement under ORS 647.105; (6) fraudulent registration of an assumed business name under ORS 648.081; and (7) unlawful business and trade practices under ORS 646.608.

In the FAC, Purelight bring claims for (1) unfair competition under 15 U.S.C. § 1125(a); (2) violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (3) common law trademark infringement and unfair competition; (4) fraudulent registration of an assumed business name under ORS 648.081; and (5) unlawful business and trade practices under ORS 646.608.  From this, the Court understands that Purelight impliedly withdraws its arguments related to federal trademark infringement under 15 U.S.C. § 1114(a) and Oregon trademark infringement, as they are presented in the Amended Motion for Preliminary injunction.

In the present motion, Purelight seeks a preliminary injunction (1) ordering Westfall to relinquish possession of the infringing domain names "purelightroofing.com" and "purelightroofing.net" and the assumed business name "Purelight Roofing" to Purelight "as the equitable owners of the domain and assumed business names,"; (2) ordering Westfall to refrain from all infringing use of Purelight's

Trademarks and name; and (3) directing Westfall to file with the Court and serve on

Purelight a report in writing under oath setting forth in detail the manner and form

in which he has complied with the injunction within thirty days after the issuance of

the preliminary injunction under 15 U.S.C. § 1116(a).  Am. Mot. at 11.

## I.    Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either

a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative

"sliding scale" formulation of the test, serious questions going to the merits of their

claims.  *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131-32.

However, a court's decision on a motion for preliminary injunction is not a ruling on

the merits of the claim.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415,

1422 (9th Cir. 1984).

In addition, the Court notes that the portion of Purelight's motion that seeks

an order directing Westfall to surrender the disputed domain names and assumed

business name to Purelight would constitute a mandatory injunction.[3]  A "mandatory

injunction orders a responsible party to take action" and "is particularly disfavored."

*Marlyn Nutraceuticals, Inc. v. Mucos Pharms GmbH & Co.*, 571 F.3d 873, 878-79 (9th

Cir. 2009) (internal quotation marks and citation omitted).  The "already high

standard for granting a TRO or preliminary injunction is further heightened" when

a party seeks a mandatory injunction.  *Innovation Law Lab v. Nielson*, 310 F. Supp.3d

---

[3] This contrasts with the more typical prohibitory injunction which "prohibits a party from taking action and preserves the status quo pending a determination on the merits."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (internal quotation marks and citation omitted, alterations normalized).

1150, 1156-57 (D. Or. 2018). To obtain a mandatory injunction, the moving party must establish "that the law and facts *clearly favor* the moving party," not simply that she is likely to succeed. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original). "In plain terms, mandatory injunctions should not issue in doubtful cases." *Id.* (internal quotation marks and citation omitted).

In the Amended Motion, Purelight argues that it is likely to succeed on its claims for trademark infringement and unfair competition under 15 U.S.C. § 1114(a); 15 U.S.C. § 1125(a); ORS 647.105; and the common law, as well as its claim for cybersquatting under 15 U.S.C. § 1125(d). As noted, the FAC has dropped Purelight's claims under § 1114(a) and ORS 647.105 and so the Court will assess the motion as to the remaining claims.

## A. Unfair Competition under 15 U.S.C. § 1125(a) and Common Law Trademark Infringement

The elements of a claim for common law trademark infringement are the same as those for a false designation of origin claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *See Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (stating the "basic" elements of a "Lanham Act trademark claim" and applying them to both a common law trademark infringement and false designation of origin claim); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (noting that claims for trademark infringement and unfair competition are "subject to the same test" and stating that "the critical determination" is "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public

will be confused as to who makes what product." (internal quotation marks and citation omitted)). To assert a claim for either cause of action, a plaintiff must allege and prove "(1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden*, 683 F.3d at 1202-03 (citation omitted); *see Levi Strauss & Co. v. Blue Bell Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (listing the same elements). The "core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse consumer about the source of the products." *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007) (citation omitted). The party "claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works, Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).

Under *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), courts are to weigh the following non-exhaustive factors in considering the likelihood of confusion stemming from a defendant's contested use of a given mark: "1) the strength of the mark; 2) the proximity of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) types of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product lines." *Id.* at 348-49. The similarity of the marks, the relatedness of the goods, and the use of a common marketing channel constitute "the controlling troika in the *Sleekcraft* analysis." *GoTo.com Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). "Further the importance of each

*Sleekcraft* factor will vary in each case and a plaintiff need not satisfy all the *Sleekcraft* factors." *Cloud 9 Comics LLC v. Cloud 9 Comics and More LLC*, Case No. 3:21-cv-00173-YY, 2021 WL 6066666, at *7 (D. Or. Oct. 6, 2021) (internal quotation marks and citations omitted).

In this case, Purelight has advanced evidence that it has been using the Purelight marks in commerce in southern Oregon since 2019. Purelight used the mark in connection with its roofing work, for which Westfall was a contractor employed by Purelight to provide roofing services to Purelight's clients. Purelight has also provided evidence suggesting that Westfall's use of the Purelight marks was intended to infringe of Purelight's use of the same mark, either as an effort to extract payment for the sale of the marks or to divert business from customers seeking services from Purelight. The use of internet advertising and access is at the heart of the case, as evidenced by the dispute over the use of domain names. Westfall has not responded to Purelight's motion and has not presented any evidence to contradict Purelight.

On consideration of the *Sleekcraft* factors, the Court concludes that Purelight has shown a sufficient likelihood of success on the merits of its claims for unfair competition and common law trademark infringement. At the very least, Purelight has shown serious questions going to the merits of those claims.

## B. Cybersquatting

Purelight also seeks a preliminary injunction with respect to its claim for cybersquatting under 15 U.S.C. § 1125(d). To state claims for cybersquatting, "a

trademark owner must plausibly allege that the defendant: (1) has registered, trafficked in, or used a domain name, (2) that is confusingly similar to the plaintiff's trademark, and (3) has a bad faith intent to profit from that domain name." *Potter v. Dark Horse Comics, Inc.*, Case No. 3:16-cv-02090-SB, 2017 WL 5711436, at \*4 (D. Or. Sept. 19, 2017); 15 U.S.C. § 1125(d)(1)(A).

In determining whether a person has a bad faith intent described under § 1125(d)(1)(A), a court may consider facts such as: (1) the trademark or other intellectual property rights of the person, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (3) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the person's bona fide noncommerical or fair use of the mark in a site accessible under the domain name; (5) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (6) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (7) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the

person's intentional failure to maintain accurate contact information, or the person's conduct indicating a pattern of such conduct; (8) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to the marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (9) the extent to which the mark incorporated in the person's domain name is or is not distinctive or famous within the meaning of § 1125(c).  15 U.S.C. § 1125(d)(1)(B)(i).

In this case, Purelight has provided evidence showing that Westfall registered multiple domain names using Purelight's actual business name.  Given the past business relationship between Purelight and Westfall and Westfall's awareness that Purelight intended to discontinue its contracting relationship with Westfall, the Court concludes that Purelight has made a showing that Westfall's intent in taking the domain names was to divert business away from Purelight and/or to capitalize on the goodwill associated with the Purelight brand.  In addition, the Court notes that Westfall refused an offer to sell the domains for $20,000 and countered with a demand for a sum at least five times greater.  The Court concludes that Purelight has made a sufficient showing of a likelihood of success, or at least serious questions going to the merits of its cybersquatting claim.

## II.    Irreparable Harm

In cases arising under 15 U.S.C. §§ 1125(a), (c), or (d), courts are vested with the "power to grant injunction, according to principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C.§ 1116(a). "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." *Id.*

As discussed in the previous section, the Court has concluded that Purelight has demonstrated a likelihood of success on the merits of its claims and so the rebuttable presumption of irreparable harm applies. Because Westfall has failed to respond Purelight's motion, they have failed to rebut the presumption of irreparable harm in this case.

## III.    Balance of Equities

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted). In this case, the Court concludes that the balance of equities weigh in favor of an injunction against Westfall's use of the infringing domain names and assumed business name. The Court is not convinced that a mandatory injunction compelling Westfall to surrender the disputed domains and business name to Purelight is warranted at this preliminary stage of the case, as an injunction against their use

will prevent further harm to Purelight during the pendency of this case.  Ownership of the disputed domains and business name can be resolved in the final judgment.

In addition, 15 U.S.C. § 1116(a) provides that a court may include a provision in an order granting a preliminary injunction "directing the defendant to file with the court and serve on the plaintiff within thirty days after service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction."  The Court concludes that such a report is warranted in the present case.

## IV.   Public Interest

In cases involving trademarks, the "usual public interest concern" is "avoiding confusion to consumers."  *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993-94 (9th Cir. 2009).  In this case, the Court concludes that there is a risk that Westfall's continued use of the disputed domains and assumed business name will result in confusion among the consumers of roofing services in Southern Oregon.  The Court therefore concludes that the public interest weighs in favor of the requested injunction.

## V.   Bond

Rule 65 provides that a court may grant a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or

restrained." Fed. R. Civ P. 65(c).  In this case, considering the scope of the injunction, the Court concludes that no bond should be required.

**CONCLUSION**

Plaintiffs' Motion for Preliminary Injunction, ECF No. 10, is GRANTED on the following terms:

(1) Defendant Chester Westfall is ORDERED to refrain from all infringing use of Purelight's Trademarks and name, including, but not limited to, the use of the internet domains "purelightroofing.com" and "purelightroofing.net" and the assumed business name "Purelight Roofing"; and

(2) Defendant Chester Westfall is ORDERED to file with the Court and serve on Plaintiff a report in writing under oath setting forth in detail the manner and form in which he has complied with the injunction within thirty (30) days of the date of this Order.

It is so ORDERED and DATED this _____26th_____ day of September 2022.

       /s/Ann Aiken
       Ann Aiken
       U.S. District Judge